FILED
December 4, 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# Memorandum of Points and Authorities

Case number 25-10392-RMI

## Arguments:

### I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ACCEPTED THE FALSE PROPOSITION THAT A GUNSHOT WOUND COULD EXIT A BONE WITHOUT FRACTURING THE BONE.

The trial court abused its discretion when it accepted the testimony of Josselson when he testified that Thomas had a bullet exit the back of Thomas' neck WITHOUT A FRACTURE (emphasis added) of any bones of the neck. Josselson was asked to demonstrate the trajectory of the bullet that allegedly struck the left shoulder area of Thomas on criminal defense attorney Matthew Fregi (Fregi). Josselson testified that the bullet struck the left clavicle area and exited the back of the neck. When asked what bone was underneath the alleged exit of the gunshot in the back of the neck, Josselson answered the cervical vertebrae (CV). Josselson also testified that the CV are stacked on

top of each other [ ].
The trial court's abuse of discretion was also furthered by the attending physician for Thomas, Dr. Emily Miraflor (Miraflor) of Highland. Miraflor was also asked to demonstrate the trajectory of the gunshot wound to the left shoulder area [ ]. She testified that the alleged bullet travelled from the left clavicle area through the back of the neck [ ]. When she was asked what bone was underneath the alleged exit wound in the back of the neck, she also stated it was the CV [ ]. Furthermore, Miraflor was asked if she was aware that the hospital's invoice documented her inserting a left central venous catheter (LCVC) into Thomas' left jugular vein on his second day in the hospital. Miraflor replied that sometimes procedures can get mixed up on an invoice [ ]. Miraflor was also asked if she was aware that the Discharge Summary Report (DSR) documented that a LCVC was inserted into Thomas' left jugular vein. Miraflor replied that she was not responsible for writing the DSR [ ].

[Exhibit: ____], [Exhibit: ____].
Therefore, the trial court abused its discretion by accepting the false proposition that a bullet exited Thomas' CV and did not fracture a bone. The testimony of Josselson makes this proposition unacceptable due to the fact the CV are bones stacked on top of each other [____]. Thus, a bullet of any size would have had to fracture the bones in the CV because there is no space between the bones for the bullet to exit. Furthermore, an examination of the back of the neck area of the white t-shirt [Exhibit: ____] clearly shows that the bullet would have had to exit the CV. A simple test can also demonstrate the trial court's abuse of discretion if a person touches the bone in the base of their neck; this is the bone under discussion. And, again, there is no space for a bullet to exit without fracturing a bone.

In closing on this point: the district attorney's attempt to rehabilitate Josselon's answers added more evidence that the trial court abused

its discretion by accepting a false proposition. On cross, Josselson testified that the CV was a "deep-deep bone in the body" [____]. And Josselson testified a bullet could exit the back of the neck without breaking a bone [____]. However, both of these positions are anatomically incorrect. As mentioned above, a person can touch their CV by touching the back of their neck. Moreover, and as mentioned above as well, the white t-shirt clearly shows a poked hole over the CV. Thus, a CV would have had to be fractured if the shirts are genuine (which they are not) [Exhibit: __] Josselson's answers on cross violate the laws of anatomy. Thus, the trial court implicitly accepted the false proposition that a bullet could exit a bone in the back of Thomas' neck without fracturing a bone.

## II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ACCEPTED THE FALSE PROPOSITION THAT THE DECEAS-ED HAD AN EXIT GUNSHOT WOUND

ON HIS RIGHT BUTTOCK.

There is absolutely no evidence that Thomas suffered a gunshot wound to his right buttock. After the passing of the doctor who actually conducted the physical autopsy, Ogan, Josselson issued his own autopsy statement on November 14th, 2024. Josselson wrote that Thomas suffered a gunshot wound to the left upper quaddrant of the abdomen that travell-ed in a downward slope through his inte--stines and exited his right buttock [Exhibit: ____]. However, when Josselson was asked to point out ANY (emphasis add--ed) gunshot wound scar or signs of medical intervention on an autopsy photo of Thomas' right buttock [Exhibit: ____]. Jossel-son testified that the "photos were really grainy" [____]. The "grainy" comment is a reference to the hospital's fabricated intake photos of Thomas' right buttock (and other fraudulent gunshot wounds) that does not show a gunshot wound exit (medical records page 1316). The photo needs to be

Page 23 of 34

enhanced to distinguish anything. Unfortunately, the fabricated intake photos were not made apart of the record. Nonetheless, this reference is confirmation of the chain conspiracy the defendant has alleged in that the Sheriff's dept. knowingly went along with the hospital's lies by assigning gun shot wounds to where the hospital claimed. Even so, Josselson could not identify any gunshot wound scar or signs of medical intervention on Thomas' right buttock ▭ in the autopsy photo.

The trial court's abuse of discretion was furthered when Josselson was asked if an isolated blood stain on the right buttock area of the shirts lined up to his right buttock exit wound statement on his review, autopsy ▭. Josselson testified that he wasn't sure that the blood stain was a gun shot wound ▭.

The district attorney made no attempt to challenge the non-existent gunshot wound to the right buttock. Instead, he elicited testimony from Josselson and Miraflor that the exit

district attorney was disingenuous to the court when, in closing, stated that the words posterior and lateral are synonymous, thus MiraFlor and Josselson were actually talking about the lateral hip _____. This is gibberish because a simple observation proves the flaw in the district attorney's position. IF a man lays in a bed on his back, he is laying on the posterior plane of his body. His heels, buttocks, back and back of the head will be touching the bed. On the other side of the coin, if a man lays on his lateral side, his ear, one shoulder, one hip and one leg will touch the bed. Thus, the posterior and lateral are not synonymous.

III. THE COURT ABUSED ITS DISCRETION BY FAILING TO INTEGRATE THE TESTIMONY OF TWO SHERIFF DEPUTIES WHO DID NOT OBSERVE A GUNSHOT WOUND TO THE LEFT CLAVICLE OR THE LEFT SIDE OF THE ABDOMEN.

wound is actually on the lateral side of the right hip. MiraFlor [ ], Josselson [ ].

Therefore, the trial court abused its discretion by implicitly accepting that Thomas had a gunshot wound exit his right buttock for three reasons. First, there is absolutely no evidence on the autopsy photo that Thomas had a gunshot wound to his right buttock [Exhibit: ]. Second, the shirts have absolutely no evidence of a bullet exiting the right lateral hip [Exhibit: ]. Third, the isolated blood stain is over the right buttock for the reason that the stain/hole is on the backside of both shirts, directly underneath the fabricated gunshot wound that falsely exited THE BACK OF THE NECK (emphasis added) of Thomas [Exhibit: ]. Thus, the right isolated blood stain IS (emphasis added) over the right buttock, which means the blood stain on the right buttock areas of the shirts DO NOT HAVE A CORRESPONDING INJURY ON THE AUTOPSY PHOTO (emphasis added). In closing on this point, the

Page 26 of 34

The two deputies who documented putting pressure on a single hip wound did not document seeing a gunshot wound to the left clavicle area or the left upper quadrant of the abdomen of Thomas. Deputy John Krieg (Krieg) testified that he put pressure on a single gunshot wound to the right hip area [     ]. When the photographs of the shirts were shown to Krieg, and he was asked to point to the bloody injury he saw on the shirts, he said: "There's no blood on the shirts because I pulled them up" [     ]. When given a moment to realize his answer was non-sensical due to the fact he could not have magically arrived immediateley, thus some bleeding had to occur on the shirts, he was asked again to point to the blood on the hip area of the shirts he applied pressure to. Krieg testified that HE DID NOT SEE THE INJURY ON THE SHIRTS HE APPLIED PRESSURE TO (emphasis added) at the incident scene. [     ] Exhibit: [     ]. Next, Deputy Thinh Tran (Tran) testified that the only gunshot wound he saw was to the lateral side of the left hip [     ]. The petitioner chose not to ask Tran any

more questions due to the fact there is no dispute that there is not an injury to the left hip. Nonetheless, there is no blood or holes on either lateral hip side. Exhibit: [ ].

The court's abuse of discretion was furthered when the district attorney elicited testimony from Krieg and Tran about how much time they spent applying pressure to Thomas' wound. Tran testified he was with Thomas for about two minutes [ ]. Krieg testified he was Thomas for about ninety seconds (90) [ ]. The general direction of the line of questioning appeared to be that both deputies were Not with Thomas long enough, in a hectic situation, to properly observe other gunshot wounds [ ].

Thus, the trial court abused its discretion by failing to integrate the testimony of two deputies who did not see a gunshot wound to the left clavicle or the left upper quadrant of the abdomen for the following five (5) reasons. First, if the shirts in evidence are used as an OBJECTIVE STANDARD (emphasis added) of measurement, this would then mean that Deputy Krieg and Deputy Tran were apply--ing life saving pressure to a NON-EXI-

Page 28 of 34

STENT WOUND(!) (emphasis added). Second, the district attorney never challenged the testimony of Krieg that the injury Krieg applied pressure to is not present on the shirts in evidence. Third, the district attorney's theory that Krieg and Tran were not with Thomas long enough to observe other gunshot wounds is flawed since the theory did not consider the time from when the only injury to the hip was inflicted until the time law enforcement applied pressure; obviously blood got onto the shirts in that timeframe. Fourth, according to the shirts, Thomas should have had a fractured neck, but he didn't. And Finally, the isolated blood stain/hole on the right buttock of both shirts do not have a corresponding injury on Thomas' right buttock.

    The only permissible view of the shirts in evidence is that they are manufactured.

## IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ACCEPTED AN IMPERMISSIBLE VIEW OF THE

EVIDENCE.

The United States Supreme Court (USCT) has defined clearly erroneous as a form of abuse of discretion when the trial court accepts an impermissible view of the evidence. Anderson v. City of Bessemer (1985) 470 U.S. 564; see also United States v. Yellow Cab Co., (1949) 338 U.S. 338 ("...such a choice between two permissible views of the weight of the evidence is not 'clearly erroneous'"). In Anderson, the petitioner sued the city when a less qualified male applicant was selected for the position of Recreational Director over her (470 U.S. 568). The Fourth Circuit reversed the district court's judgment holding that the trial court's finding of fact that the petitioner was discriminated against based on her sex was clearly erroneous (470 U.S. 571). The USCT reversed the Fourth circuit by holding: "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous" (470 U.S.

574).

In the instant case before this Honorable Court, the trial court abused its discretion because it implicitly accepted an impermissible view of the evidence for the following three (3) reasons. First, the trial court accepted the false proposition that a gunshot wound can exit the CV without breaking a bone. Second, the trial court implicitly accepted the false proposition that an isolated blood stain with a hole over the right buttock of both shirts IS A GUNSHOT WOUND (emphasis added) when there is NO CORRESPONDING SCAR ON THOMAS' RIGHT BUTTOCK (emphasis added). And finally, the trial court failed to accept the fact that two Sheriff deputies who, according to the shirts in evidence, were applying pressure to a non-existent wound, while Thomas was bleeding from fabricated wounds to his left shoulder and abdomen.

Therefore, the trial court abused

its discretion in a clearly erroneous manner when it accepted the impermissible view of evidence that the shirts are legitimate. The gunshot wound to the left shoulder is obviously a medical tube, and the white oval scar on Thomas' neck is a bedsore because the logical result of a fractured CV never occured. Moreover, the scar on the left abdomen is the feeding tube scar since their is LITERALLY NO EVIDENCE (emphasis added) of a gunshot wound exiting Thomas' buttocks. These two facts, by default, mean that hands guided by an evil mind poked holes and poured blood in the exact same locations of Highland's medical tubes to gain a murder conviction.

## PRAYER FOR RELIEF

The petitioner request that this Honorable Court grant the following relief:

A) Appoint counsel to the petitioner so that the:

I. Transcripts (Clerk/Reporter)

Page 32 of 34

II. Filings
III. Exhibits
IV. All other necessary items to fully offer this Writ before this court can be obtained due to the fact that the petitioner has been abandoned by trial counsel. Fregi has failed to obtain any document and take action to prosecute this Writ. See American Bar Association Rule 1.16; In Re Sanders (1999) 21 Cal 4th 697, and Borre v. State Bar (1991) 52 Cal 3d 1047.

B) Issue an order to show cause so that the State of California can respond to this petition, and this Honorable Court can have a full understanding of the controversy.

C) Then, within the wise judgment of this Honorable Court, declare the manufacturing of evidence by the Contra Costa Sheriff's department to have shocked the conscience. Rochin v. California, (1952) 342 U.S. 165.

D) And finally, issue a Writ of Mandamus to the Superior Court of the State of California, Contra Costa County to:

    I. Vacate the petitioner's July 1st, 2025 first degree murder conviction.

    And

    II. Mandate the trial court to reverse its May 23rd, 2025 denial of the petitioner's motion to dismiss, and entered into the trial court's records a dismissal of the petitioner's criminal case based on shock the conscience. Rochin, supra.

## VERIFICATION

The petitioner, Nicolas Baron Adjuder, declares the foregoing to be true and correct under the penalty of perjury.

*Nicolas B. Adjuder*
Nicolas B. Adjuder
11/25/2025

Nicolas B. Adjuder
218 JV 790
F
1 Court St.
Martinez Ca 94553



County Jail
Inmate Mail

Clerk of the
Court
1301 Clay St.
#400 South Tower
Oakland, Ca 94612

RECEIVED
DEC 1 2025
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE